UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ARTHULA MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-02078-SEB-MKK |
| | ) | |
| D. CYBORSKI, | ) | |
| | ) | |
| Defendant. | ) | |

**Order Denying Cross Motions for Summary Judgment and Granting Other Motion**

Plaintiff Arthula Miller alleges in this action that Defendant Sgt. D. Cyborski retaliated against him for the filing of a lawsuit against another staff member by pretextually firing from his prison job. Mr. Miller and Sgt. Cyborski have each filed a motion for summary judgment. Dkts. [49], [55]. For the reasons below, both motions are **denied**. The Court also addresses and **grants** Mr. Miller's motion for a ruling on his motion for summary judgment. Dkt. [57].

**I.**
**Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Sgt. Cyborski filed his motion for summary judgment on May 15, 2025. Dkt. 49. Mr. Miller responded to Sgt. Cyborski's motion on June 20, 2025, and filed his own summary judgment motion on June 20, 2025. Dkts. 54, 55. Sgt. Cyborski did not directly respond to Mr. Miller's motion. When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
## Factual Background

At the time of the incidents at issue, Mr. Miller was an inmate at New Castle Correctional Facility ("New Castle") where Sgt. Cyborski was a Sergeant. Dkt. 3 at 2; dkt. 51-2 at 1.

During February 2022 annual evaluations, non-party Makenzie Hacker recommended that Mr. Miller be terminated from his prison job on the basis that

> [Mr. Miller] was unprofessional and unable to control his aggressive outbursts with both staff and other incarcerated individuals, causing disruptions with the safety and security of the facility's daily operations. Further, [he] posed a threat to me because he seemed to purportedly make mistakes within his job duties (hence evaluating his quality of work as sloppy and lazy), and seemed to do so in order to spend more time in my office to complete his work.

Dkt. 51-4 at 3-4.

After Mr. Miller got a different job as a hallway worker and sometime prior to August 2023, Sgt. Cyborski and non-party Lt. Krul discovered that Mr. Miller had been telling facility staff how to perform their duties and trying to give them orders. Dkt. 51-2 at 1-2; dkt. 51-2 at 1. Female staff complained to them that Mr. Miller would follow and stare at them. *Id*. After warning Mr. Miller about his conduct and finding that he continued speaking inappropriately to facility staff, they decided it was appropriate to fire him from his prison job. *Id*. Non-party case manager Terrell subsequently fired Mr. Miller from his job as a hallway worker on August 3, 2023. Dkt. 3 at 4.

Mr. Miller sued non-party Ms. Hacker on June 17, 2022. *See Miller v. Hacker, et al.*, No. 1:22-cv-01240-JPH-TAB (S.D.Ind. June 17, 2022) at dkt. 1. A summons was issued for Ms. Hacker on September 19, 2023, but she was not served until October 24. *See id.* at dkt. 39.

On November 16, 2023, Mr. Miller filed this action alleging that Sgt. Cyborski fired him from his prison job after he filed his lawsuit against Ms. Hacker. Dkt. 11 at 2, 3.

Sgt. Cyborski filed a motion for summary judgment on May 5, 2025. Dkt. 49. Mr. Miller filed his motion for summary judgment on June 20, 2025. Dkt. 55.

### III.
### Discussion

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Sgt. Cyborski does not dispute that Mr. Miller engaged in protected First Amendment activity by filing his lawsuit against Ms. Hacker or that losing his job was not a deprivation likely to deter future protected activity, so the Court focuses on the third element, motivating factor.

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013); *cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause usually defeats retaliatory arrest claim

4

but not if plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who did not engage in the same sort of protected speech were not).

"Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680 (cleaned up) (standing alone, fact that inmate's cell was shaken down nine minutes after he engaged in First Amendment protected activity could not create triable issue of fact as to retaliation claim because another, non-retaliatory motive existed. *Id.* at 680–81). "We emphasize . . . that not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). *See also Santiago v. Anderson*, 496 F. App'x 630, 633 (7th Cir. 2012) (stating that inmate's claim "that every ill befalling him must be retaliatory because everyone knows him to be litigious and a frequent correspondent with the grievance officer—falls short of stating a claim even under notice pleading"); *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient").

Moreover, a plaintiff pursuing a retaliation claim must be able to present some evidence that a defendant knew of the protected speech. *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 582 (7th Cir. 2011). Conclusory assumptions and circular arguments that a defendant must have known about the protected speech because they retaliated against him are insufficient. *Id. See also Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) ("conclusory statements not grounded in specific facts are not enough" to avoid summary judgment) (cleaned up).

Recently, in *Byrd v. Smith*, 2025 WL 3645147 (7th Cir. Dec. 16, 2025), the Seventh Circuit addressed the amount of evidence an inmate-plaintiff must present to avoid summary judgment when alleging that prison officials have engaged in retaliation. The plaintiff in *Byrd* was terminated from his prison job after receiving a negative work evaluation from his supervisor. The Court of Appeals reversed the grant of summary judgment in the supervisor's favor. *Id.* at 3-4. It noted "retaliation needs to be only *a* motivating factor, not *the* motivating factor," in order to proceed with such a claim. *Id.* at 3. Although there was evidence that the supervisor was following prison directions in completing the evaluation, there was competing evidence of suspicious timing, substantive differences with recent performance reviews drafted by other supervisors, incorrect information regarding whether the review was discussed with the plaintiff, and the availability of a different evaluation form that would not have resulted in the plaintiff losing his job. *Id.* This was enough to warrant a trial. *Id.*

Sgt. Cyborski argues that here Mr. Miller has no evidence that he recommended removal from his hallway worker position due to retaliatory animus because there is no evidence that Sgt. Cyborski was aware of Mr. Miller's litigation until May 2024, some 9 months after the firing. Dkt. 50 at 7. Sgt. Cyborski further argues that Ms. Hacker herself did not know about the litigation until one month after Mr. Miller's firing. *Id*.

Mr. Miller, however, argues that Sgt. Cyborski did know about the litigation, even though Ms. Hacker had not yet been served with a summons. Dkt. 54 at 2. Mr. Miller argues that Ms. Hacker was served in April 2023 and that, even if she was not, counsel for her employer GEO Group, Inc., was. *Id*. A review of the Hacker case's docket, however, shows that she was not served until September 2023. Moreover, the assumption that Sgt. Cyborski knew about the litigation because someone who is not his attorney was aware of it and because a fellow facility staff member

6

was aware of it, is the kind of conclusory assumption that will not defeat a motion for summary judgment. *Wackett*, 642 F.3d at 582.

Mr. Miller also argues, however, that Sgt. Cyborski directly questioned him about the litigation on August 3, 2023, after overhearing his conversation with another inmate about the case. Dkt. 54 at 2-3. In his complaint, Mr. Miller alleges the following:

> On August 3, 2023, while I was in M1 pod, Sergeant D. Cyborski heard an offender ask me if I had heard back from the court about my lawsuit I filed on Hacker (a former case manager). I said not yet. Cyborski asked me if I was suing Hacker. I said yes. Cyborski stated that they don't allow offenders who file lawsuits against staff to have a job in the hallway.

Dkt. 3 at 4. Mr. Miller was fired from his job later that day. *Id*.

Sgt. Cyborski counters that Mr. Miller cannot rest on these statements in his complaint because they are mere allegations and not disputed material facts. Dkt. 50 at 7. However, "a verified complaint—signed, sworn, and submitted under penalty of perjury—can be considered 'affidavit material' provided the factual allegations otherwise satisfy the affidavit criteria specified in Rule 56 of the Federal Rules of Civil Procedure and the declarant complies with 28 U.S.C. § 1746, which sets forth the requirements for verification under penalty of perjury." *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020). Here, the complaint is made upon personal knowledge, sets out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated. Fed. R. Civ. Proc. 56(c)(4). Mr. Miller signed his complaint "affirm[ing] under penalty of perjury that the foregoing representations are true." Dkt. 3 at 10.

Mr. Miller's evidence directly contradicts Sgt. Cyborski's argument that the firing was based on job performance and inappropriate behavior. Although Sgt. Cyborski denies the allegations, Mr. Miller has identified a dispute of material fact that would allow a reasonable jury to find that retaliatory animus was at least one factor in his job loss. *Byrd*, 2025 WL 3645147, at

*3. Accordingly, Sgt. Cyborski is not entitled to summary judgment. Because Sgt. Cyborski has designated evidence regarding his lack of personal knowledge of the litigation, from which a reasonable jury could find there was no impermissible retaliation, Mr. Miller, similarly, is also not entitled to summary judgment. Both motions must be **denied**.

### IV. Conclusion

Sgt. Cyborski and Mr. Miller's motions for summary judgment are **denied**. Dkts. [49] and [55]. Mr. Miller's motion for ruling on his motion for summary judgment is **granted to the extent** the Court now informs him of its ruling. Dkt. [57].

The Court prefers that Mr. Miller be represented by counsel for the remainder of this action. The **clerk is directed** to send Mr. Miller a motion for assistance recruiting counsel with his copy of this Order. Mr. Miller has **28 days** in which to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed *pro se*. Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

**IT IS SO ORDERED.**

Date: 3/2/2026

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ARTHULA MILLER
135730
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

All electronically registered counsel